Good morning, everybody. We're going to begin this morning with case number 18-2334, Barry v. Whitaker. We'll start with Ms. Khan. May it please the Court, my name is Afshan Khan, and I am representing the petitioner in this matter, Al Hadj Hamidou Barry. My client, Mr. Barry, requests this Honorable Court to reverse the decision by the Board on Immigration Appeals based on their denial of his relief of deferral of removal under the Convention Against Torture. This is based on the standard of substantial deference evidence test, where your Honorable Court has held that where the administrative record shows there may be contrary conclusions, that the decisions by the Board and the immigration judge may be reversed. My client claimed his relief under deferral of removal under the Convention Against Torture based on two respective claims. One, his imputed political opinion from his father, who was a former political opposition member of the ruling party, as well as his sexual orientation as a bisexual male. In regards to his first claim, his imputed political opinion of his father, his father was a former member of the UNR, a political opposition of the ruling party at the time. And because of that, he was considered a target and was considered someone that the government would chase after because of the fact that he did disagree and did oppose what the government was standing for. And as a result, my client and his family were also targeted solely because they were the immediate family members of his father. Now, under the Convention Against Torture, the federal regulations, which this Court has also upheld under Lacuna-Zanuga v. Lynch, stated that for a CAT applicant, you may look at all factors, including past torture, including relevant cutting conditions, and other commissions that you may consider important to realize whether there is a clear probability of torture. In his decision, the immigration judge stated that regardless of what had happened to Mr. Berry, that shouldn't be considered, that shouldn't matter in terms of whether or not it was torture. But in fact, Your Honors, what happened to him at the young age of eight when the military soldiers barged into his house, had stabbed his leg, attacked his mother, and threatened to cut off his leg? Your Court has held that those actions like that, imminent threats and grave bodily harm, constitute a mount to torture. And that in itself is a form of past torture that my client had experienced. Counsel, let me ask you about these, the summonses, which are part of your argument. I think it exhibits G and H. Those seem to have Indiana stamps on them from 2001. Can you give me background on that or why that would be? Well, Your Honors, my clients had received these threats through social media because individuals from Guinea had provided them more information about what was going on and what are the country conditions currently at the moment. They felt that just as a way to notarize, because they weren't able to get a notarized, because the family members weren't able to get a notarized back in Guinea, or the friends and colleagues were not able to get a notarized in Guinea, they felt it was maybe better to get a notarized here in Indiana. Again, though, they had a summons from back in 1998 that specifically was targeting for Mr. Berry's father, and then two most recent warrants are targeting both his father and his mother. And again, his mother has not returned to his country simply because she fears for her life due to the political situation that's going on right there. And the country condition reports clearly indicate that this government acts without impunity. In looking at the country conditions, the government punishes individuals who speak against the government. And they have failed to prosecute or investigate any prior actions that the security forces have taken against peaceful demonstrators using excessive force and even trying to kill certain demonstrators. And again, because of my client's association with his father, there is a clear probability of torture to my client should he return back to Guinea and go back into Guinea, to this country that he hasn't been to in 20 years, and that he had to leave because of the political situation at the time. Counsel, your client was granted a reasonable fear interview. Was that in 2017 or 2016? Yes, I believe it was in 2016, Your Honor. Was that interview transcribed or is that part of the record at all? I believe that it was a part of the record, Your Honor. I believe it's towards the end of the record. I believe in tab H, if I'm not mistaken, but I could be wrong. But it definitely is, the credible fear is in the administrative record. And again, the officers themselves did find my client credible, which is why he was able to then pursue his claim under the Convention Against Torture. That being said, again, my client has a second claim under his sexual orientation being a bisexual male. Now, the immigration judge found my client's testimony credible as a supporting affidavit showing that he did have same-sex relations with men. So that does not go in, that is not up question. However, my client does have a clear probability and essential risk of torture to himself based on the fact that his country of designation, Guinea, criminalizes same-sex relations and has an actual formal policy to investigate and prosecute same-sex activities that started in 2012. And that policy is still in effect today. And while there may not be any known prosecutions at the time, that is not dispositive to say that they do not occur. And my client spoke again, which the immigration judge found credible, that these incidents, it's possible these incidents do not go on unreported and do not get filed with the government itself. It's based on these reasons and based on the fact that the government itself does not intervene in taking actions against same-sex individuals. And my client has spoken about how private actors will harm individuals that are perceived to be gay and perceived to be maybe bisexual. And the government, again, fails to intervene and fails to affirmatively try to step in to help these individuals. And again, a threat to your body life does amount to torture in that sense. You're into your rebuttal time. Do you want to reserve it? Yes. Yes, please. I'll reserve my rebuttal time at this time. Excellent. Thank you. Mr. Lorenz. May it please the Court. My name is Jesse Lorenz, and I represent the Attorney General of the United States in this matter. This Court should deny the petition for review because record evidence fails to compel the conclusion that petitioner is eligible for deferral of removal under the Convention Against Torture. In support of his application for cat protection, Berry claimed that he would face torture in Guinea because of his father's political opinion and because of his sexual orientation. Neither claim finds support in the record evidence. Rather, petitioner attempted to string together a series of suppositions, but because he did not establish any of the links in his hypothetical chain of events, his cat claim necessarily fails. Would your view on that be the same had the documents or the purported documents from Guinea been authenticated? Well, I think that the agency gave those less weight because they weren't authenticated, but also the Board did consider those documents in considering his claim that he would be sought after because of his father's former political activities in Guinea. I do think it's important to note, though, that under this Court's case law, he was required to authenticate those or explain how he obtained them, and he did not do that in this case. So I think the Board and the immigration judge appropriately afforded them less weight. Is there any reason to think he lacked an opportunity to authenticate them? I mean, that wasn't brought up. That wasn't explained in the record. Personally, I don't know, and I wouldn't have access to that because, you know, that would have been something for them to develop in the record. I mean, if they wanted to bring that up before the immigration judge, I don't think the immigration judge would have prevented that. There's nothing in the record that suggests he would have. So it was something that they had an opportunity to do, and it just doesn't look like they did. First, addressing Mr. Berry's political claim, he didn't demonstrate a clear probability of future torture. Even assuming arguendo, as the Board did, that he established past torture based on the events that occurred in his family's home in 1997, Berry didn't link any of the hypothetical or connect. He's just strung together a series of suppositions. He didn't link any of the events in his hypothetical chain. Specifically, he didn't show that the Guinean government has remained interested in his parents since 1997. Again, discussing those summonses, he didn't really authenticate them, didn't show why the court should have viewed them or gave them more weight. The older summonses also related to events that occurred 20 years ago. He also didn't show that even if the Guinean government remained interested in him or interested in his parents, that they would necessarily connect Berry to his parents upon returning to Guinea. He contended that the government would recognize his surname, but he didn't lay any foundation for that, didn't claim that the surname was common in Guinea. Last, even if he showed those two previous chains, that the Guinean government remained interested in his parents and then would connect him, he didn't show that they would torture him. He still had to show that they would harm him in a way rising to the level of torture. Turning to his sexual orientation claim, he also didn't show a clear probability of torture. Record evidence doesn't compel the contrary conclusion. He acknowledged that he was not harmed in the past because of his sexual orientation and that he didn't know anybody who had been harmed in Guinea because of their sexual orientation. The Immigration Judging Board didn't err in affording less weight to his mother's testimony and his testimony about events that occurred 10 or 20 years prior in Guinea because that didn't reflect what current country conditions are. His evidence also doesn't compel the conclusion he seeks. It is true, according to the record, that the Guinean government criminalizes same-sex sexual activity, but the record evidence does not support Berry's claim that the law is prosecuted. There is no evidence of that at all. Granted, the immigration judge credited his claim that it's underreported, but there's nothing compelling the conclusion that they do prosecute that law. Also, the Immigration Judging Board didn't err in affording less weight to the blog post relied on Berry. As the immigration judge noted, that was an opinion piece, and it didn't really provide any specific information about what kind of harm LGBT individuals face in Guinea. If there's no further questions, Your Honor, we're prepared to submit and request that the court deny the petition for review. Thank you. Ms. Conner. Honorable Board, in regards to my client's claim for his imputed political opinion for his father, my client clearly had a form, really faced a form of past torture in the fact that he was stabbed in his thigh by the military soldiers in pursuit of his father based on one of those summons back in 1998. My client clearly could not be able to walk for months on end and couldn't even go to the hospital because his family was afraid of being targeted again once more in an attack or else be killed. And the current country conditions clearly show that this government acts without impunity. It is evident that they allow the security forces to go after individuals, and even our own U.S. Department of Justice report states that in pursuit of criminal suspects, similar to my client's father, that they will punish family members who are immediate family members, which again would be my client, Mr. Berry. And my client even testified to the fact that his uncle, who shares the same surname as himself and of course his father, was murdered because in pursuit of trying to find his father also. Now in regards to the sexual orientation claim, again, there is a clear probability that my client will be targeted because he is a bisexual male and this country does criminalize same-sex behavior as well as it does have a formal policy to pursue and to investigate moral violations, moral violations which they also consider being same-sex relations also. And again, this court as held in Alaska, as I believe, stated that a person who is searching for attack should not have to hide their characteristics, such as being gay or being of their race or those sort of things. So it's evident that, and again, because of the fact that even though there may not be known prosecutions, my client again testified to the fact that his country may be committing these acts without reporting. And again, that is not dispositive to say that these reports do not occur. Again, the immigration judge found both my client and his mother, who testified, credible individuals. And my client, there definitely are things in this record that can clearly show that there should be a reverse of the decision by the board and the immigration judge. So I hope, respectfully, Your Honors, you're able to reverse this decision, grant our petition, and allow my client to further pursue his case for deferral and removal under Convention Against Torture. Thank you. Thank you, Ms. Kahn. The case will be taken under advisement.